# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:03CV362-MU-02

| | |
|---|---|
| MARK DAVID STAMPER, )<br>    Petitioner, )<br>)<br>    v. )<br>)<br>STATE OF NORTH CAROLINA, )<br>    Respondent. )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254, filed July 16, 2003; on the respondent's "Motion For Summary Judgment And Answer . . . ," filed September 5, 2003; and on the petitioner's letter-response to the State's Motion for Summary Judgment, filed December 17, 2003. For the reasons stated herein, and for the further reasons stated in the respondent's Motion for Summary Judgment, the respondent's Motion for Summary Judgment will be granted; and the petitioner's Petition will be denied and dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner was tried by a Gaston County jury for the death of Polly Ann Bell (the victim). The following factual recitation is adapted from the appellate opinion authored by the North Carolina Court of Appeals.

The petitioner and the victim had had a volatile and

sporadic romantic relationship between 1996 and 1999.  Indeed, on an occasion in 1997, both the petitioner and the victim were convicted of assaulting one another.

On August 29, 1999, after the petitioner and the victim had spent the day drinking with friends, the two were observed "screaming and hollering and cursing at each other."  One week later on September 4, 1999 at about 10:30 p.m., the victim and a friend of hers went to the petitioner's home after having drank some alcohol.

During that visit, the victim and the petitioner had "a little disagreement" when the petitioner accused the victim of having another boyfriend.  Eventually, the victim's friend left after the victim told her that she would be fine with the petitioner.  However, the victim's friend returned to the petitioner's home at about 10:45 p.m. in order to use his telephone.  Although the victim "seemed a little upset" at that time, she again told her friend that she was okay.  Thereafter, the victim's friend left the petitioner's home.

However, by about 1:00 a.m., the petitioner called 911 to report that the victim "was not breathing."  The petitioner also called the victim's mother and told her that the victim had died from a "pill overdose."  Police officers arrived at the petitioner's home shortly after they were called.  Upon their arrival, they found the victim dead, lying on her back on the petitioner's bed.  The victim was unclothed from her waist to her

feet, her body extensively was covered with recently made bruises, and she also had some recently sustained abrasions. In fact, the victim had hemorrhages throughout her neck area, which were indicative of her having been choked, and she had hemorrhages on both sides of her head.

In addition, there were blood stains throughout the petitioner's home, including on the bedroom wall and the mattress where the victim was found. Police also found a towel with clumps of head hair next to the victim's body, and clumps of hair in the living room and bathroom trash cans. A bent curtain rod with blood stains also was found on top of the headboard where the victim was found.

A pathology report which was introduced by the State reflected that the cause of the victim's death was a subdural hematoma--that is, a brain hemorrhage, caused by a blunt force trauma to her head. Such injury ultimately resulted in heart failure for the victim. Laboratory tests indicated that the victim's blood alcohol level was .02, the equivalent of "approximately one drink."

For his part, the petitioner testified in an attempt to explain the events which had taken place and the evidence which was found at his home. In particular, the petitioner testified that he and the victim had argued after she accused him of being with other women; that the victim "went off the handle" when he told her he wanted to end their relationship, and she hit him

with her hands and with a curtain rod; that the victim must have sustained her numerous injuries during one or more of her falls off of the toilet, in the shower and off of his bed; and that during the period preceding her death, he had not hit or grabbed the victim, and he had not done anything which would have bruised or injured her.

Not surprisingly, in consideration of the foregoing and other evidence offered at trial, the trial court denied the petitioner's motions to dismiss for insufficient evidence, such motions having been made at the close of the State's evidence and at the close of all of the evidence. Ultimately, the jury was charged on first and second degree murder, and on voluntary and involuntary manslaughter. On April 27, 2000, the jury found the petitioner guilty of voluntary manslaughter in the death of Ms. Bell. As a result, the Court sentenced the petitioner to a term of 72 to 96 months imprisonment.

Following his conviction, the petitioner directly appealed his case to the North Carolina Court of Appeals. However, by an unpublished opinion, the State Court of Appeals found "no error" in the case, and affirmed his conviction and sentence. See North Carolina v. Stamper, No. 00-936 (N.C. COA July 3, 2001).

Next, on November 8, 2001, the Supreme Court of North Carolina denied the petitioner's Petition for Discretionary Review. Thereafter, the petitioner did not seek any additional direct review of his case.

Rather, on April 4, 2002, the petitioner initiated his pursuit of collateral review by filing a Motion for Appropriate Relief ("MAR" hereafter) in the Superior Court of Gaston County. Nevertheless, by an Order filed April 22, 2002, the petitioner's MAR was denied. Finally, on August 2, 2002, the State Court of Appeals denied the petitioner's Petition for a Writ of Certiorari.

Consequently, on July 16, 2003, the petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254. By this Petition, the petitioner asserts that the trial court erred in including a self-defense instruction with its instructions on first and second-degree murder; that the trial court erred in allowing the prosecutor to display unnecessarily gruesome and repetitive autopsy photographs; that the trial court erred in including its pattern jury instruction for "admission" in its jury charge; and that the trial court erred in denying his Motions to Dismiss which were made at the close of the State's evidence and at the close of all of the evidence. The petitioner also alleges that trial and appellate counsel were ineffective in several respects.

After initial review of the petitioner's Petition, the undersigned found that the Attorney General for the State of North Carolina should be required to answer the subject allegations. Accordingly, on July 25, 2003, the Court entered an Order directing the respondent to answer the entire Petition.

On September 5, 2003, the respondent filed his Answer. By that document, the respondent denies all of the material allegations of the petitioner's Petition. More particularly, the respondent contends that: 1) since the petitioner requested the self-defense instruction about which he now complains, the alleged error was "invited" and, therefore, cannot form the basis of any claim for relief; 2) even assuming it was error to admit the autopsy photos, the petitioner has failed to show--particularly in light of the overwhelming evidence of his guilt--that such error was so egregious that it rose to the level of a constitutional violation; 3) on the facts of this case, the inclusion of the "admission" jury instruction did not, standing alone, constitute a violation of the petitioner's due process rights; 4) and in light of the evidence of the petitioner's guilt, the trial court's denial of his Motions to Dismiss could not have violated his due process rights.

On December 17, 2003, the petitioner filed a letter-response to the petitioner's Motion for Summary Judgment. In that letter, the petitioner essentially reiterated the allegations set forth in his Petition. That is, the petitioner claims that the photographs were admitted only to "inflame the jury." The petitioner also argues that his Motions to Dismiss should have been granted because the State's evidence failed to support any more than "a suspicion that he was the cause of [the victim's] death . . . ."

Last, the petitioner submitted an affidavit from "Barbara Stamper." Ms. Stamper's affidavit reflects that the petitioner's trial attorney had promised that the petitioner's payment of some unspecified amount of money would entitle him to counsel's representation at trial and at "any and all appeals afterward if need be."

Nevertheless, the Court's review of this matter demonstrates that despite his efforts to do so, the petitioner has failed to establish that there is any genuine issue of material fact to be resolved in this action. More significantly, the record of this matter reflects that the respondent is entitled to a judgment as a matter of law. Consequently, the respondent's Motion for Summary Judgment must be granted.

## II. **ANALYSIS**

### A. **Standard of review on Motion For Summary Judgment**.

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment when the pleadings and other relevant documents reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc), cert. denied, 498 U.S. 1109 (1991).

A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.  However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment." Id. at 249-50.

> **B.  The respondent's evidentiary forecast tends to show that he is entitled to summary judgment on all of the petitioner's claims**.

The petitioner's claim that the trial court's inclusion of a self-defense instruction violated his rights under the Fifth, Sixth and Fourteenth Amendments is baseless.

At the outset of its evaluation of this claim, the Court notes that the petitioner here asserts that it was error for the trial court to have included the subject instruction in its charge on first and second degree murder.  However, the records from the petitioner's State court proceedings show that he there raised this argument in connection with the manslaughter instructions.  Thus, to the extent that the petitioner is attempting to argue error in connection with the murder charges, such allegation would be subject to dismissal as unexhausted.  However, given that the petitioner was convicted of voluntary manslaughter--not murder, and he consistently challenged the subject instruction in connection with such manslaughter charge, this Court will presume that the petitioner, in fact, intends to challenge the self-defense instruction in connection with the

manslaughter jury charge.

In any event, even in addressing this allegation in the context of the manslaughter charge, it still is apparent that the petitioner cannot prevail on this claim. Indeed, as was noted in the State appellate court found, not only did the petitioner fail to object to the self-defense instruction, he actually requested that instruction during the Court's charge conference with the attorneys.

Consequently, pursuant to the invited error doctrine, the petitioner simply cannot prevail with this collateral challenge when he himself requested the instruction during his trial. See, e.g., Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir. 1993) (en banc) (invited error "cannot form the basis for habeas corpus relief . . . no exception to the invited error doctrine has ever been adopted by this circuit). See also United States v. Collins, 372 F.3d 629, 635 (4th Cir. 2004) (noting that a defendant will not be permitted to challenge a jury instruction on appeal which he or she requested); United States v. Quinn, 359 F.3d 666, 674-75 (4th Cir. 2004) (same); United States v. Hopkins, 310 F.3d 145, 151 (4th Cir 2002) (same), cert. denied, 537 U.S. 1238 (2003); and United States v. Bennafield, 287 F.3d 320, 325 (4th Cir.) (same), cert. denied, 537 U.S. 961 (2002).

Similarly, the petitioner cannot prevail on his claim that his due process rights were violated when the trial court instructed the jury on "admissions" without indicating which

specific facts the petitioner could be found to have admitted.

For resolution of this claim, the Court first must determine "whether, taken as a whole, the instruction fairly states the controlling law." United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir. 1990). Moreover, "[b]efore a federal court may overturn a conviction resulting from a state trial . . . , it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146. The question for this Court, therefore, is "whether the [supposedly] ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147.

In the case at bar, the appellate court found that the petitioner had admitted to having argued with the victim (about his fidelity), to having struggled with and been struck by her prior to her death, and to having been alone in his home with the victim at the time she died. Accordingly, even if it was error for the trial court to have given the instruction without having pointed the jury to these matters, in light of all of the evidence of the petitioner's guilt, and his disingenuous testimony, such isolated error could not have "so infected the entire trial" as to constitute a constitutional violation.

Likewise, the petitioner has failed to demonstrate an entitlement to relief on his claim that the trial court's admission

of two autopsy photographs violated his constitutional rights.
To be sure, it is well settled that "[d]ecisions regarding the
admission or exclusion of evidence are committed to the sound
discretion of the [trial] court and will not be reversed absent
an abuse of that discretion." United States v. Lancaster, 78
F.3d 888, 896 (4th Cir. 1996). Accord United States v. Bostian,
59 F.3d 474, 480 (4th Cir. 1995).

Regarding this specific claim, the law is equally well
settled that even if a particular piece of evidence shocks the
sensibilities of those in the courtroom that fact, standing
alone, would not violate due process. Lisenba v. California, 314
U.S. 219 (1941). Indeed, absent "circumstances impugning funda-
mental fairness or infringing specific constitutional protec-
tions," the admissibility of evidence in a state trial does not
even present a federal question for review. Grundler v. North
Carolina, 283 F.2d 798, 802 (4th Cir. 1960); see also Howard v.
Moore, 131 F.3d 399, 415 n. 18 (evidentiary ruling must violate a
specific constitutional right or render entire trial fundamental-
ly unfair).

Here, the two pictures in question were of the victim's
hemorrhaged vocal cord and her hemorrhaged brain. According to
the appellate court, those pictures were admissible to illustrate
the medical expert's testimony concerning the facts that the
victim had been choked and struck in her head. In response to
this, the petitioner merely argues that such pictures were

admitted for the sole purpose of inflaming the jury.

Suffice it to say, therefore, in light of the appellate court's ultimate conclusion that the probative value of such evidence was not substantially outweighed by its prejudicial effect, if any, the petitioner has failed to show that the admission of the pictures violated his right to due process.

With regard to the petitioner's allegation that the trial court erred in denying his motion to dismiss at the close of all of the evidence, such claim also must fail. Indeed, to withstand the respondent's Motion for Summary judgment on this claim, the petitioner needed to forecast evidence which could establish that, after viewing the evidence in the light most favorable to the State, no rational trier of fact could have found the essential elements of voluntary manslaughter beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Here, the State points to the evidence which it presented to establish the petitioner's guilt. Such presentation included evidence that the petitioner had a history of physical violence with the victim; that during the period preceding her death, the victim and the petitioner had argued and struggled over a period of "hours"; that the petitioner had been alone with the victim at the time of her death; that the victim's body had recently sustained extensive bruises and abrasions; that the victim had been choked and struck in the head, causing her to hemorrhage in those areas shortly before her death; and that the victim had

died from a blunt force trauma to her head which caused her heart to fail.

On the other hand, the petitioner has failed to present an evidentiary forecast on this claim.  Rather, the petitioner has argued that the State's evidence "at most, supported a suspicion of his guilt."  Clearly, therefore, the petitioner's mere assertion cannot withstand the State's Motion for Summary Judgment on this claim.

Last, the petitioner also has alleged that he was subjected to ineffective assistance of counsel in several respects.  In particular, the petitioner claims that trial counsel was indef.-festive for having failed to "find why a drug test was not done on [the victim]," for having failed to "use mitigating factors at sentencing"; and for having failed to "give [a] motion to suppress evidence during trial."

Additionally, the petitioner claims that appellate counsel was ineffective for having failed to address certain otherwise unidentified "issues" which the petitioner had asked him to address on appeal, for having failed to review his briefs with the petitioner, for having failed to "include mitigating factors that later were bar[re]d because [the petitioner] didn't bring them up at direct appeal, and for having failed to raise trial counsel's appellate ineffectiveness.

Notwithstanding the fact that this Court Ordered counsel for the respondent to answer all of the petitioner's claims, includ-

ing the ones alleging ineffective assistance of counsel, counsel for the respondent has inexplicably failed to respond to those particular allegations. Despite that failure, however, it is abundantly clear to this Court that the petitioner is not entitled to any relief on such allegations. Therefore, the petitioner's claims of ineffective assistance of counsel also will be <u>dismissed</u>.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>,

466 U.S. at 697.  Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Here, the petitioner has set forth a plethora of matters which he believes point to a conclusion that trial and appellate counsel were ineffective.  For instance, the petitioner complains that neither attorney attempted to present any mitigating factors on his behalf.  However, the petitioner, himself, also has failed to point to anything that could have been presented in mitigation of his offense.

In any case, the record reflects that trial counsel actually did seek to present mitigating evidence inasmuch as he advised the court that the petitioner had been a good employee; that he was a father of two nearly grown children; and that his alcoholism was a substantial contributor to his bad judgment.  Therefore, in light of those matters, and particularly in light of the petitioner's own failure to proffer any mitigating evidence, the Court finds that the petitioner has failed to carry his burden on this claim.

The petitioner further complains that trial counsel failed to determine why a drug test had not been performed on the decedent. Again, however, the petitioner failed to even hint at what benefit he would have received from the answer to that question. Therefore, given that omission, this Court will decline to speculate about how trial counsel's decision not to pursue additional questions regarding the absence of a drug test could have prejudiced the petitioner.

The petitioner also complains that counsel was ineffective for failing to submit a motion to suppress. Nevertheless, the petitioner has not even attempted to allege a single fact which would support a conclusion that the police who searched his home somehow violated his Fourth Amendment rights, thereby rendering the evidence which was found subject to challenge.

Finally, the petitioner claims that appellate counsel was ineffective for having failed to raise trial counsel's ineffectiveness. However, in light of this Court's conclusion that trial counsel was not ineffective--at least not in regards to the matters raised herein--appellate counsel could not have been ineffective for having failed to challenge trial counsel's performance. Moreover, the petitioner's conclusory allegation that appellate counsel was ineffective for having failed to review his brief with the petitioner does not reflect any resulting prejudice. Therefore, this claim also must be rejected.

### III. CONCLUSION

The petitioner has failed to demonstrate that the State court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," Williams v. Taylor, 529 U.S. 362, 403-04 (2000). Likewise, the petitioner has failed to show that he otherwise is entitled to relief; therefore, his Petition for a Writ of Habeas Corpus must be denied in its entirety.

### IV. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. That the respondent's Motion for Summary Judgment is **GRANTED**;

2. That the petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED**; and

3. That the Clerk shall send a copy of this Order to the parties.

**SO ORDERED.**

**Signed: July 25, 2005**

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge